or argument not to exceed 15 minutes per side. Mr. Napolitano for the defendant's appellate. Good morning, Your Honors. May it please the Court, Gregory Napolitano for Ms. Allen. I have requested four minutes of time for rebuttal. That's fine. You may proceed. Thank you. And good morning, Mr. Shipley. Your Honors, we've asked the Court to remand this matter back to the District Court for two purposes. The chief purpose is to evaluate non-proton, the capacity of my client to have entered her plea at the time when she did so. The case presents a little bit of an unusual time lapse in between the time during which she entered her plea and when she was ultimately sentenced. It was about a year time. During that period of time, Ms. Allen received some treatment and a diagnosis while incarcerated of bipolar disorder. That's relevant because that was known to the District Court at the time of sentencing. Also known to the District Court at the time of sentencing was that Ms. Allen had switched attorneys. Her prior attorney, the attorney that shepherded her through her hearing on the matter. There were no facts disclosed in the motion that revealed what those differences were or the nature of the conflict. You said there were or weren't? There were not, Your Honor. Furthermore, upon the appointment of new counsel, his first act appeared to be to file a motion to withdraw her plea. That motion to withdraw the plea was subsequently withdrawn prior to the sentencing. None of this, not a single word of it, was discussed during the sentencing at all. Admittedly, new counsel didn't bring it up, but the District Court did not inquire at all about the machinations in the docket prior to sentencing. I find that troubling. Furthermore... Explain to me why you find that troubling. We've been talking to district judges. There are dozens and dozens of cases where there are requests to withdraw pleas. They're filed. They're withdrawn. In the meantime, there are arguments with counsel. Sometimes counsel's replaced. Sometimes it isn't. I just don't see the basis of your suggestion that that's even troublesome. It's frankly, rightly or wrongly, kind of add to the mix. This one is that she's bipolar, which probably describes what? Half of the defendants that we see? Your Honor, I don't know. I think that's part of our argument. I don't know. The District Court didn't know. I don't know that that's the kind of thing that courts ought to speculate about. To your broader point, Your Honor, my purpose here is not to cast dispersion on the District Court. Frankly, I'm not even arguing that we have a sufficient record here to declare competency or incompetence. I think that's a bridge too far. However, what I find troubling is that I think the case law here has developed a concept that's akin to sort of the procedural reasonableness concept that this Court is routinely presented with, in that this body needs to have an adequate record upon which it can conclude whether there was competence throughout the process. And what I find troubling about the District Court's lack of an inquiry here is not so much what that inquiry would have unearthed. I have my personal opinion on it, but that's irrelevant. It's that what we don't have is a clear record, a clear record establishing that there was capacity for my client to have entered this plea, a very significant plea, a plea that resulted in an over 10-year sentence with a six-year period of supervised release to follow. Furthermore, I don't think the bipolar . . . Wouldn't it be safe to say that the lack of a record, more often than not, could come from a number of different sources? It could come from somebody being asked to do something and not being permitted to do it. That didn't happen here. It could be because the lawyer is incompetent, that normally we would . . . something, as you know, we'd take up in habeas. Those are the two that come readily to mind. We don't have any of that. Normally, when somebody wants a do-over, they come to us with some sort of evidence. You don't have any evidence. You don't have a doctor that says, well, I haven't had a chance to examine her, but geez, I think under these circumstances, there really is a legitimate question of competency. With all due respect, what do we have, aside from your, as a lawyer's, concern? I think you expressed it. I think we have several things, Your Honor. First of all, what we have is a record that does not demonstrate, through her own words, a command of what's occurring. As I relate in my briefs, the plea, colloquy, and the discussion with my client had . . . was comprised of 30 instances in which her response to the court was, yes, yes, sir, no, no, sir. Beyond that . . . So it doesn't affirmatively show it, but there's nothing that makes you doubt it, either? Well, I think you have the statement of her new attorney at sentencing, in which he says, I believe my client to have been mentally ill for years. You have the assertion in the memorandum . . . But wait, he says that he believes she was mentally ill for years and finally got diagnosed. But he doesn't say, and I don't think she was competent. Well, again . . . Or there's reason to think she wasn't competent, or I'm speaking to her now and I question whether she was competent. It's all addressed towards sentencing. Indeed, and in some respects, I think you can glean from that a number of things. But what I don't think we can conclude is anything about competence one way or the other. And I don't think that the question . . . the case law is fairly clear in that the question of competence is distinct from the question of whether there is a sufficient set of circumstances to warrant an investigation. It may well be, Your Honor, that upon reevaluation, there is an examination performed or a couple of examinations, they confirm her competence, and the matter is addressed in that way. I don't know. Let's go to the plea colloquy, because you seem to attach some significance to that. I agree with you that when you look at the transcribed proceedings, it's a series of 99.9 percent of all the plea colloquies. And that's because, as I assume you know, district judges are essentially provided a checklist that they're required to go through. They ask a series of questions that are designed to elicit yes or no answers. And that's exactly what happened here. Now, what the transcript doesn't reveal, that the district judge did see, was her demeanor and her reaction to these questions. So if somebody stands there and says, yes, Your Honor, no, Your Honor, yes, and they're looking you in the eye, it seems to me you can draw one conclusion from that that we can't see in the record. The other one would be the person stumbles, the person pauses, the person looks to her attorney and he says yes, all those kind of things that we've all seen, none of which are going to be demonstrated by the record, by the transcript itself, and for which we don't have any evidence in this record that her yeses are anything more than a full understanding unequivocal yes. So what do we do with that? Well, I think it's relevant that at the time of the plea colloquy, the court was not possessed of the knowledge that she did have a mental illness. So perhaps the court was not as on guard or watching for behaviors that might be consistent. Possession yet of anything that says she has a mental illness. Well, to that point, Your Honor, and I think this is also relevant, the court did order that she receive a mental health examination and treatment once incarcerated. And so to that point, what I think we can glean from that is the district court must have been sufficiently convinced that there was something to be evaluated and treated. And that's right at the end of the sentencing hearing. So it's okay to do it once she's in jail. So this proposition would be that if you order that, which is not unusual in a sentencing, therefore, that's going to be evidence that later on you should have done a competency hearing going all the way back to the entering of a plea? Well, I think it also works in the context of how we got to the point that there was not any expression of a medical opinion in our record. I think it appears clear from both transcripts that my client's trial counsel did not request that there be an evaluation performed. What the district court did with that, however, is construe that as in some ways a tacit waiver of that issue. In fact, the district court at the end of the sentencing hearing refers to it as a, quote, non-issue because my client's trial counsel didn't file a motion. It says something to the effect of, well, you didn't bring that up to me, so that's a non-issue. It's a non-issue because he didn't bring it up and there wasn't any evidence apparent to the judge that the judge should have brought it up. Your Honor, had the judge said what you just said, I think the record would be much different. The judge doesn't say that. This body, I don't think, can infer the latter part of that sentence. You want judges to be required to make affirmative statements of what they're not doing? I think when there is sufficient basis for there to be some question, reasonable question, regarding competency or capacity, when you've had an intervening diagnosis of a mental illness, as we have here, when you have an individual... Why do you keep saying that it's a diagnosis of a mental illness? That is what is demonstrated by the record that we have. The fact that the person is bipolar and is being successfully treated with medication, as far as we know, means she is mentally ill? Absolutely not, Your Honor. But it means that there was at least a diagnosis made while she was incarcerated. She had been receiving treatment. My understanding, again, from the scant record, is that that treatment concluded at some point prior to her sentencing because she was moved from the facility where she was receiving the treatment. I see my time has expired. May I finish? She had been moved from the facility where she had been receiving treatment to a different facility pending sentencing. So it's unclear from the record whether she was receiving treatment at the time of sentencing. But it is clear that the new attorney did not request that evaluation, right? That's correct. Did not question her confidence. There does not appear to be... There's no suggestion of it in the transcripts, and there are no motions filed in the record. That's correct, Your Honor. Okay. I just would like to hear your position on the second issue. Thank you, Your Honor. The position is simply this. I think the court considered mental health in one context and not another. As I've already said, the district court did grant the request for examination of my client and treatment once incarcerated. The district court, in going through its 3553 sentencing colloquy, says, we're going to talk about mental health. We'll come back to that. There is then a request for a variance, a downward departure by the defense counsel that speaks in some context about her past history, drug abuse, mental health. The court imposes sentence, gives its BOSTEC instruction, and my client's trial counsel says, Your Honor, respectfully, you mentioned you would return to the issue of mental health. You never did so. That's actually the context in which the court says, I consider it a non-issue. You didn't file a motion. I think it's clear what trial counsel was attempting to do there was say, you acknowledge there was this distinct portion of the nature and characteristics of the defendant that sings to the issue of mental health. You were going to return to it. We kind of got lost in the sauce. You never did that. I think that the record is clear in that regard that that isn't what occurred. The government, I think, takes the position that while it did consider her mental health for purposes of post-incarceration treatment, but those are distinct in 3553. So your argument is that even when he did return to it, he never addressed her legitimate argument? In the context of her history and circumstances. Yes, Your Honor. Thank you. Thank you. Thank you. Thank you. You'll have your rebuttal time. Thank you. Mr. Shipley. Your Honors, may it please the court. My name is Corey Shipley and I represent the United States in this case. I want to talk a little bit about the defendant's brief and some of the issues that we have already touched this morning. But it seems as though the defendant in this case is trying to conflate two separate terms. When we're talking about mental illness on one side and incompetence on the other. That's not what this case is about. This case is about when a district court should sua sponte step in and look at the evidence or the record that it has in front of it to see whether or not there is evidence of incompetence. The district court has no duty to further investigate. And as Judge McKeague has already said this morning, this court has said numerous times that the bare record that this court has as opposed to the district court's actual findings in real time is a poor substitute. And that's exactly what happened in this case. The district court in this case was in the best position to look and see if there was indicia of incompetence. And your honors, there is no error here. No such set of circumstances existed in this case that would cause a court to reasonably believe that there was an issue as to the defendant's competence. And to touch on a few things that have not been stated and may fall not outside of the record because I understand that's not something this court can consider. But stuff that's within the record, I'd like to address a few things there that actually show the court, I should say, the antithesis of incompetence. When we look at the record that this court has in front of it and the indicia of the defendant's competence in this case, we look back to the actual, there were jail phone calls in this case. And with the co-defendant, there were multiple conversations with the co-defendant in this case where the defendant, Ms. Allen, actually lobbied the co-defendant to actually let her take over this criminal enterprise, this criminal distribution ring of Alpha PVP. So let's go a little bit further, her conduct after her arrest. She gave a very detailed. Those jail phone calls are in the record here? Your honor, it comes from the plea agreement, your honor. It was referenced in the actual plea agreement in this case about her conduct and what she stated and what she was doing during, well, actually pre-arrest, but what she was talking with the co-defendants about. And when we look at her conduct post-arrest and her detailed account of what actually happened in this case, she discussed pricing terms, she discussed numbers, and she also discussed the communication that she had with various other dealers. Going a step further in the investigation in a chronological order, we have a cell phone search that took place in this case that's referenced in the plea agreement. And we have a chain of text messages that are in excess of 22 different people that show her level of mental acuity, basically showing that she was organizing this drug distribution ring. Furthermore, going on down the line, we have her, or have the fact that she debriefed numerous times. And during her debrief, she gave, she continued to give a detailed account of her involvement in the conspiracy and also her involvement. It sounds consistent with being a little manic. Your Honor, and yes, and we have that, and we have her statements that show exactly what is going on. And that was enough for, you know, for the government to actually step in, in this case, and actually look at her testimony, evaluate it in real time, and decide that there would be some type of downward departure given in this case. And they took it even a step further. It was not strictly on her basis of her debriefs that she gave in the past. It was actually, it was actually even further than that. She was willing to testify. And, you know, Your Honors, this, you know, the government is not in the business of convicting people that are incompetent. And the actual real-time evaluation was that she was competent. She had her, she was full possession of her mental faculties. As the district court said, you know, during her plea colloquy, that actually they accepted the plea. And the United States was actually going to use her as a witness at trial if needed. Now, what happened was, in the case, plea agreements were entered and she was not needed at trial. Where did the court address her argument that because of this undiagnosed condition or the argument that her mental illness played a big role in this and it was untreated? And so that that was another reason for a little bit of a departure? Your Honor, I don't know that the court in that case actually said, you know, that the mental illness was an actual reason that factored into the departure. But also, this court has said numerous times that in cases that when the district court is presumed to have actually considered all the materials that were presented to it, and in the defendant's sentencing memorandum, there were things or there were arguments that she had. But I'm saying something different. The cases say that the sentencing judge has to address, it has to be clear that the judge considered a non-frivolous argument. And I don't see where the judge addresses it, addresses the argument that her diagnosis and her situation supports a downward departure. I don't see where he considered that. Can you show me in the record where you? Your Honor, as far as him actually saying he considered the mental illness or the, I think when he talked about it as a non-issue, I think you can interpret that in multiple ways. I think him saying that, as Your Honor stated before, about the non-issue factor, I think you can interpret that a couple of different ways. When he says it's a non-issue, when confronted with the question, you know, during the sentencing hearing, when confronted with that question, saying it was a non-issue, you know, that was something that was argued in the sentencing memorandum of the defendant. And the court considered that with the evidence it had before. The court, you know, is presumed to have considered everything there. So it was actually verbally stating that on the record. I don't think the court actually verbally stated that on the record. But in this case here, I'm not sure that they had to. And I want to draw the distinction in this case. There's been discussion this morning from this panel that, you know, there was a bipolar diagnosis. I think it was post-plea that happened in this case. Your Honor, that simply there is not sufficient to warrant this court to actually say that the defendant was incompetent. Numerous cases such as the United States v. Stafford back in 2015, this court was... I'm not talking about competence. Yes, Your Honor. I'm talking about the sentence. I just was asking whether... Okay, I mean, where the court addressed it. With regard to her sentence, am I understanding Your Honor's question correctly? With regard to her sentence and whether or not that was sufficient grounds for an additional departure? Yes. I don't think the court actually fully stated or addressed that. And like I said, Your Honor, respectfully, you know, I'm not sure that in cases like this, I'm not sure, you know, the court is required to actually address. And, you know, per United States v. Judge, the court is not required to address every single argument that the defendant raises. You know, and here the record shows that, you know, the district court, you know, correctly calculated the guideline range in this case. And we had a 188, I believe a 235 or 237 guideline range. And furthermore, with regard to that specific sentence in this case that was imposed, we have a 151 month sentence that was imposed. And also it's very clear that a sentence that's below the guideline range... Well, excuse me, let me back up one second. A sentence, as this court knows, a sentence that's within this guideline range is presumed to be reasonable. And the burden is even higher for a defendant when a sentence is actually far below the actual advisory guideline range, which it was 37 months below the actual guideline range in this case. Why wouldn't the way to look at this be to say that the judge, certainly on the record, said that he understood she had mental health problems, whatever they were. He departed downward. He denied her request for an additional downward departure. Seems to me your argument would be that while he didn't say why, he's implicitly ruling on this question that Judge White is asking about in denying her motion for an additional downward departure. Your Honor, I think that's absolutely correct with... I guess the argument would be we don't really know whether he's denying it because he didn't think that she had any mental problems, although that doesn't seem right because he just acknowledged just before that that she had them. Or he determined that it had already been taken into account adequately in the departure that he has already granted. Your Honor, I think that was what I was actually trying to get to when I'm saying there was multiple ways to actually view how the term, you know, quote-unquote non-issue when he stated that in his sentencing hearing. And I think that you can reasonably infer from that that the court had already considered that and deemed it not to be a issue that the court would not consider or refuse to consider, but a issue that the court considered and deemed it to be not an issue that was applicable to an actual further departure in the case. It really just comes down to how much more specific we're going to require district judges to be. And this court, I would say, hasn't been real consistent on that. And Your Honor, I think that goes back to the... ..to the statement that I actually, you know, started my argument with in the Stafford case back in 2015 when this court has made it very clear. And what you yourself addressed earlier, it's, you know, the bare record that we have that this court reviews. And when the court does not have the luxury of actually looking at the defendant in this case, the court has a bare record to review in this case. That's not a good answer. That's not the answer to Judge White's question. Her question goes beyond that and says, hey, at sentencing there's this issue and he doesn't specifically say what he did with the issue, other than to deny the motion. And Your Honor, my response to that, again, would be that, you know, it's not incumbent upon the district court to actually address every single issue that the defendant raises. Every...but the court has presumed in this case, or presumed in every case, that to have considered each of the defendant's arguments. And in this case here is exactly what he did when he deemed it to be a non-issue that was actually stated on the record, him saying that he did not find, or deeming a non-issue, it's reasonably to infer that he did not find enough, or find enough indicia of any mental illness that would warrant a further departure of the case. Your Honor, when... Your Honors, when looking at a case such as this, where there is so much contingent upon the lower court's discretion, when this court has stated that the district court is in the best position to actually view the proceedings, view the level of competency or lack thereof in a case, that's exactly what this court did. This court viewed the defendant, viewed her throughout the entire process, viewed her from the plea colloquy and during the sentencing. There is nothing in this record before this court, even though the opposing counsel states that there is nothing in this record, or I think he stated, if I'm not misrepresenting, he said there is not enough in the record to establish competency or incompetency. That was a statement he said earlier. You know, I think the analysis could almost end there, because the district court is not under the discretion or under a duty to investigate further. The district court has what it has in front of it to look at, to see whether or not there is competency, whether or not there is a question of incompetency. And I think the opposing counsel and I both agree upon the test of this court in the Filiage case that said what this court should look at, and it's whether a judge should reasonably conclude that there is a question to the defendant's competence. And as the opposing counsel said earlier, he's not actually alleging that there was an issue with, or there's nothing in the record to establish competence or incompetence. So actually, I think that the issue or the argument could end there, because the district court, if we stated that, there is nothing in the record that would establish or any indicia of incompetence, or enough to cause a judge to reasonably believe that there was incompetence. And as I said, I think the defendant in this case would want the district court to further investigate and do much further than what is required of the court. But that is not the standard here. The standard for this court to look at is an abuse of discretion. The court must look and find that the actual lower court committed clear error. There is no error here, let alone to be clear error. And I think in the, and also even going further in that, there was a case, United States v. Gooch, that I think Your Honor authored that opinion and stated when something is not raised, such as competence, in that case, because there was an issue of competence in that case, I think there was even a, I don't know if they were pro se, but it was an issue of the defendants in that case making statements about being protesters and everything else. There was not a competency issue raised at the lower court. And this court stated that in that case, that this court would actually review that when something is not brought to the court's attention, that this court would actually review that for plain error. There is no error in this case. And Your Honors, for those reasons that have previously been stated, I would ask this court to affirm the opinion of the lower court. And I have a few seconds left, and I'll be happy to answer any questions that this panel might have. Thank you. Thank you, Your Honor. Mr. Napolitano. Thank you, Your Honor. Judge White, to answer your question, I submit to you that you won't find evidence of that. In the record, that is our secondary argument. And it is compelled by 3553A1 that there be an adequate representation in the record of that consideration in the circumstances where it is relevant as a component of the nature and characteristics of the defendant. Is it really fair to say it isn't in the record? Because the judge does say there was no request for a competency evaluation, so that's a non-issue. Now, we can argue about what that meant or not meant, but it seems to me a reasonable inference is he doesn't find any evidence of there being incompetency. Now, having said that, he then moves on to the sentencing, which is what Judge White's question was. And did he then have to say more in connection with why he wasn't further departing because of an issue for which there was no evidence in the record? Why would you be required to repeat that again? I think there's two ways to construe it. And you're well aware of the body of case law that says that a further downward departure is a tough road for an appellant to travel. I don't know that that's our argument. Our argument is, as a predicate matter, early on in his sentencing discussion of the 3553 factors, A1, he says, we've got a mental health issue here. We're going to get to that later. So he sort of tables it, puts it aside in the context of the initial evaluation for purposes of sentencing under 3553. They then delve into the downward departure discussion. And when, after Bostick, defense counsel raises the issue again, hey, Judge, you know, I don't know that you articulated your consideration prior to your announcement of your initial sentence. The court says it considered it a non-issue. So I think there are two ways of looking at it. And our position is, Your Honor, that they tabled, the district court tabled the discussion, as I say, sort of got lost in the sauce of the rest of the context of the sentencing hearing and never returned to it, even when requested to do so. We did return to it. You just don't like the answer. Well, I don't like the answer, Your Honor. But I don't think he returned to it in that context. I respectfully disagree in that regard. I think he returned to the issue of mental health. I think he espoused some general observations. I think he talked about having a sufficient confidence that she had difficulties that would compel her to need an examination and treatment once she's in jail. And again, I still think, and I want to return to something that counsel said relative to the duty upon the district court. I think the government, and we disagree in this respect, the assertion was made, I'm paraphrasing, that the district court isn't under a duty to look further when it's not requested. That's not the law. I cite the statute. The district court has an obligation moving forward throughout the proceedings, through sentencing, to ensure the capacity, the competency of the person that stands before it. I also think it's relevant here. We had a lot of discussion about the facts that could have been brought to bear at trial. This didn't go to trial. So, you know, in its core, what we're also talking about here is a knowing, voluntary, and intelligent waiver of one's right to trial. And when you consider competency in the context of that very significant waiver, even for a person where there is no evidence of incompetency, we have convictions that come before district courts every day in which folks aren't burdened with mental illness. And there is an exacting review of whether there's a knowing, voluntary, and intelligent waiver. This speaks to that issue as well. We have a person where there is a diagnosis of bipolar disorder. Manic episodes can certainly occur when it's undiagnosed, particularly when you have drug use. And you have that person at some discrete point in time waiving all of these rights, waiving their right to trial, waiving their right to defend themselves. I think that's relevant, and I think it's distinct from a question of capacity generally. All right, thank you, Mr. Napolitano. We notice that you are appointed under the Civil Justice Act. We appreciate your assistance to both the defendant, for whom you've done an excellent job, and the court as well. I'm honored to do so. Thank you, Your Honor.